UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRACIE L. WURM,

        Plaintiff,

v.                                            Case No. 14-CV-1119

VALDERS AREA SCHOOL DISTRICT et al.,

        Defendants.

**DECISION AND ORDER GRANTING MOTION FOR PARTIAL DISMISSAL**

Before the court is the defendants' motion to dismiss the fourth cause of action in the amended complaint, alleging a due process violation under 42 U.S.C. § 1983 arising out of the non-renewal of Plaintiff Tracie Wurm's contract for employment as the School Psychologist/Special Education Director of the Valders Area School District (ECF No. 15). The defendants also request dismissal of the fifth cause of action, which asserts a First Amendment claim under § 1983, to the extent Plaintiff seeks relief from Defendant Debra Hunt in her official capacity. For the reasons below, the motion will be granted.

**BACKGROUND**

Dr. Tracie Wurm was employed by the Valders Area School District (the District) from 2001 to June 2011. The Superintendent of the District was Dr. Debra Hunt, and Jennifer Berge, Eugene Borgwardt, James Kocourek, Roger Manke, Brenda Platten and John Thews are present or former members of the School Board (the Board). The District, Dr. Hunt, the Board and these individual board members are each defendants in this case. The following facts are stated in the amended

complaint and exhibits attached thereto.

Plaintiff's most recent employment contract with the District was effective July 1, 2010 to June 30, 2011. (Am. Compl. Ex. 3, ECF No. 13-3.) Under the "Contract for Certified Administrators," Plaintiff's responsibilities as Director of Special Education and School Psychologist included performing "at a professional level of competence the services, duties and obligations required by the laws of the State of Wisconsin and the rules, regulations and policies of the School Board," and participating in "professional meetings and college level courses for the purpose of improving and stimulating [her] professional growth." (*Id.* at 1.) Plaintiff's salary for 2010 was $76,405.00 (*id.*) and she earned about $80,708 in 2011 (Am. Compl. ¶ 100, ECF No. 13).

The contract also provided that renewal and non-renewal thereof was governed by subsections 118.24(6) and (7) of the Wisconsin Statutes. (ECF No. 13-3 at 1.) These sections provide:

> (6) The employment contract of any person described under sub. (1) [including contracts of school district administrators] shall be in writing and filed with the school district clerk. At least 4 months prior to the expiration of the employment contract, the employing school board shall give notice in writing of either renewal of the contract or of refusal to renew such person's contract. If no such notice is given, the contract then in force shall continue in force for 2 years. Any such person who receives notice of renewal or who does not receive notice of renewal or refusal to renew the person's contract at least 4 months before the contract expiration shall accept or reject the contract in writing on or before a date 3 months prior to the contract expiration. No such person may be employed or dismissed except by a majority vote of the full membership of the school board. Nothing in this section prevents the modification or termination of an employment contract by mutual agreement of the parties. No school board may enter into a contract of employment with any such person for a period of time as to which such person is then under a contract of employment with another school board.
>
> (7) Prior to giving notice of refusal to renew the contract of any person described under sub. (1), the employing board shall give such person preliminary notice in writing by registered mail at least 5 months prior to the expiration of such contract

2

that the board is considering nonrenewal of the contract, and that if such person files a written request with the board within 7 days after receiving such notice, the person has the right to a hearing before the board prior to being given written notice of refusal to renew the contract. The written request for a hearing shall include a statement requesting either a private hearing or a public hearing before the board. Section 118.22 does not apply to such a proceeding. If a hearing concerning nonrenewal of the contract is requested, the reasons upon which the board is considering nonrenewal may also be requested and the board shall furnish such reasons before the hearing in writing.

Wis. Stat. § 118.24(6)–(7). Finally, Plaintiff's contract provided:

> The Board will reimburse the Administrator $125.00 for each graduate credit. To be reimbursed, the grade of A or B is required. If the Administrator is still employed by the district three (3) years after completion of the course, the balance of the total cost of the credits will be reimbursed to the Administrator.

(ECF No. 13-3 at 3.)

Plaintiff received a "Preliminary Notice of Consideration of Non-Renewal" on December 21, 2010. The notice stated the reasons for the consideration of non-renewal were budgetary. Plaintiff requested a public hearing, which was held January 4, 2011. At the hearing, Dr. Hunt, the Superintendent, advised the Board that elimination of Plaintiff's position was a budgetary, cost-saving measure. In response, Plaintiff "detailed several reasons why eliminating her position would not save the District money." (Am. Compl. ¶ 66.) Plaintiff proposed reducing her contract to ten months, reducing her compensation to 80 percent of what it was, and combining her positions with a guidance counselor role. (*Id.*) According to the amended complaint, board members responded by stating that they would not consider such alternatives in the meeting, but would have to address them at a separate meeting. (*Id.* ¶ 67.)

Plaintiff also raised other "issues of public concern" at the hearing, including that the elimination of her position would drop the District below the National Association for School

3

Psychologists' prescribed ratios for the number of psychologists per student, that reduction of the Director of Special Education position to part-time would prevent the District from meeting the needs of students and that many of the District's existing practices had the effect of discriminating against students with disabilities. (*Id.* ¶ 68.) At the end of the hearing, the Board voted not to renew Plaintiff's contract for the following year. (*Id.* ¶ 69.)

In a news article published two days after the hearing Dr. Hunt was quoted as stating that the Board's decision not to renew Plaintiff's contract was "purely a budget matter and has nothing to do with discipline or quality of work." (*Id.* ¶ 64.) Hunt was also quoted as stating that eliminating Plaintiff's position would save the District $75,000 to $89,000 a year. Thereafter, the District announced that Hunt would assume Plaintiff's responsibilities as Director of Special Education and that the District would be hiring a part-time employee to fill the position of School Psychologist. (*Id.* ¶¶ 70, 74.) Plaintiff requested to be considered for the part-time position but the District indicated that it would not consider her. According to the amended complaint, in previous instances where the District's full-time positions have been reduced to part-time, the District offered the eliminated full-time employee the part-time position before posting it. (*Id.* ¶¶ 76–77.) In May 2011, the District changed the posting for the School Psychologist position to full-time. Plaintiff, who was just finishing her 2010–2011 term of employment for that position, formally applied. (*Id.* ¶¶ 93–94.) Ultimately the District hired a new employee as a full-time School Psychologist at a starting salary of $60,247.00. (*Id.* ¶ 97.) According to a publication reporting the new hire, Dr. Hunt also received a $15,000 raise for assuming Plaintiff's responsibilities as Director of Special Education. (*Id.* ¶ 98.) Accordingly, Plaintiff alleges that the termination of her employment caused the District to lose money, not save it. (*Id.* ¶ 105.)

4

The amended complaint also states that before the January 4 hearing Plaintiff had requested reimbursement of approximately $5,000 in graduate tuition expenses she had incurred. (*Id.* ¶ 80.) When Plaintiff raised the issue after the hearing, Dr. Hunt responded, "When you had talked to me requesting reimbursement for the graduate credits/classes that you had taken less than three years ago, I had said that it would be presented to the School Board if you resigned from your position. You did not resign. The Board endured an Open Hearing. You will not be reimbursed for the graduate credits/classes you had taken less than three years ago." (*Id.* ¶ 81.)

On July 1, 2011, Plaintiff filed a charge with the Equal Employment Opportunity Commission. Dr. Hunt subsequently contacted a potential employer of Plaintiff's and advised of a "legal matter" involving her. Thereafter, a news article reported that the School Board was investigating a former non-teaching employee, and that the police chief had been brought into the matter. (*Id.* ¶¶ 109–110.) Plaintiff amended her EEOC complaint July 16, 2012 to include new incidents of discrimination and retaliation. One week later, based on information Plaintiff says the District had for more than a year, the District contacted the State of Wisconsin Department of Public Instruction (DPI) and alleged that Plaintiff had engaged in "immoral conduct." The District sought revocation of Plaintiff's professional licenses. (*Id.* ¶¶ 112–13.) The DPI determined there was no probable cause to revoke Plaintiff's license on November 30, 2012. (*Id.* ¶ 115.)

Without issuing a finding as to whether any violations occurred, the EEOC closed its file on Plaintiff's charge on June 17, 2014 and Plaintiff timely filed this action on September 13, 2014. Plaintiff asserts claims of age discrimination, disability discrimination under the Americans with Disabilities Act and the Rehabilitation Act (based on alleged retaliation against Plaintiff for helping the District's disabled students exercise their rights), and, as discussed in more detail below,

5

violations of due process and the First Amendment under 42 U.S.C. § 1983. After Defendants moved to dismiss the § 1983 claims, Plaintiff filed an amended complaint asserting the same five claims and adding grounds to support the alleged constitutional violations.

**ANALYSIS**

In deciding a motion to dismiss, the court construes the allegations in the complaint in a light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in favor of the non-moving party. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011). To state a claim, a complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

**I.     Due Process Claim**

Plaintiff claims the non-renewal of her employment contract deprived her of liberty and property without due process of law. Specifically, Plaintiff alleges the stated reason for her non-renewal was "inadequate and entirely not true," that she had "no opportunity to be heard as it related to the true reason(s) for terminating her employment," that Defendants had "pre-determined to terminate [her] employment" prior to the January 4, 2011 hearing, and that, "without due process of any kind," Defendants prevented her from enjoying the full benefits of her employment, prevented her from obtaining employment within the District, and accused her of "immoral conduct" in the complaint to the DPI. (Am. Compl. ¶¶ 139–45.) She asserts this claim against all ten defendants,

6

including as to Dr. Hunt in her individual and official capacities and the board members in their individual capacities.

Defendants argue the due process claim must be dismissed because Plaintiff has not alleged that she was deprived of a liberty or property interest cognizable under the Fourteenth Amendment. As explained below, I agree.

**A. No Property Interest**

Regardless of what notice and opportunity to be heard were or were not provided, Plaintiff must assert she was deprived of an interest in liberty or property. When the government is the employer, one may claim the government-employer deprived an employee of his or her property interest in continued employment, but only if the employee has a property interest in continued employment:

> the Supreme Court [has] noted that a property interest requires more than a "unilateral expectation" of a benefit and is not created simply because a person may have "an abstract need or desire" for such a benefit. To the contrary, to have a property interest a person must "have a legitimate claim of entitlement to it." It is also clear that such legitimate claims for entitlements are not derived from the Constitution itself; "[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." [I]n the employment context this means that a property interest can be created in one of two ways: (1) "by an independent source such as state law securing certain benefits;" or (2) by "a clearly implied promise of continued employment."

*Shlay v. Montgomery*, 802 F.2d 918, 921 (7th Cir. 1986) (internal citations omitted).

Here, Plaintiff argues she had an interest in continued employment because she could not be terminated without "just cause." But her argument is belied by her contract and rests on a misreading of state and federal regulations. With respect to her contract, renewal or non-renewal

7

is expressly governed by Wis. Stat. § 118.24(6) and (7). Subsection (6) provides the mechanism by which an administrator's contract *may* be renewed and subsection (7) prescribes the procedure to be used when a school board decides not to renew. There is a procedure to be followed, but nothing in the procedure assures the administrator any expectation of continued employment or secures for the administrator any substantive job protection beyond the two-year term of employment provided for in the contract itself. Indeed, the Seventh Circuit has clearly reached the same conclusion, holding that a contract incorporating Wis. Stat. § 118.24(6) and (7) creates no property interest in continued employment. *See Beischel v. Stone Bank School District*, 362 F.3d 430, 436 (7th Cir. 2004) ("[W]e are convinced that under Wisconsin law [the plaintiff] did not have a legitimate expectation that her employment would continue beyond the 2–year term of her contract. There are no statutory limitations [under Wis. Stat. § 118.24] as to the bases on which the nonrenewal decision can rest.").

Nonetheless, Plaintiff argues state and federal regulations require that she be terminated only for just cause. According to Plaintiff, the District is required by state and federal law to dedicate financial efforts and other efforts to accommodate its students with special needs. As the District's Director of Special Education, Dr. Wurm contends that her compensation accounted for some of the District's requisite efforts in this regard. She argues that federal regulations attendant to these obligations also required Defendant District to have "just cause" for terminating her employment.000 (Pl.'s Br. in Resp. 14, ECF No. 18)

The "just cause" provision Plaintiff relies on comes from regulations governing funds received by "Local Educational Agencies" like the District under the Individuals with Disabilities Education Act (IDEA). Regulations governing such agencies' "maintenance of effort" are intended

8

to ensure that the level of state and local expenditures for the education of children with disabilities remains relatively constant from year to year. *See* 34 C.F.R. § 300.203(a) ("funds provided to an LEA under [part B of the IDEA] must not be used to reduce the level of expenditures for the education of children with disabilities made by the LEA from local funds below the level of those expenditures for the preceding fiscal year."). The regulations further provide that the level of expenditures may be decreased without violating the "maintenance of effort" requirement if the reduction is attributable to the "voluntary departure, by retirement or otherwise, *or departure for just cause*" of special education or related services personnel. 34 C.F.R. § 300.204(a) (emphasis added).

These regulations impose obligations on the District regarding its receipt of IDEA funds; they confer no benefit or interest in continued employment on Plaintiff. The regulations provide no assurance whatsoever that her employment will not be terminated but for cause. Rather, they merely provide that if positions like hers are eliminated without cause, the District will not be excused from the "maintenance of effort" requirement. Thus, if special education personnel are dismissed without "just cause," the District will have to maintain its level of expenditure (*i.e.*, hire someone else) or face penalties, such as loss of eligibility for IDEA funds or the requirement to repay such funds already received.

The only case Plaintiff cites in support of her reliance on these regulations is inapposite. In *Perry v. Sindermann*, a professor claimed an interest in tenure arising out of the fact that although no such benefit was provided for in his contract, his employer maintained a de facto tenure program. 408 U.S. 593, 599 (1978). The Court found that the teacher could legitimately rely on the employer's longstanding practice and an employee handbook that stated such a program existed.

The Court noted that given this evidence, a genuine dispute of fact existed as to whether he was entitled to the benefit—i.e., whether "rules or mutually explicit understandings . . . support his claim of entitlement to the benefit[.]" *Id.* at 601. In this case, by contrast, Plaintiff has not cited any practice or rule of her employer that showed administrators' contracts must be renewed unless there was good cause; rather, as explained above, her contract and state law provided for just the opposite—essentially, something more akin to "at-will" employment than employment that can be terminated only "for cause." *See Beischel*, 362 F.3d at 436.

Plaintiff also claims she was "assured of continued employment" because at the District's request over the years, she had made significant investments of her time and resources into her professional development. But the fact that an employer encourages professional development falls far short of the sort of mutually explicit understanding of continued employment required to give rise to an interest in continued employment. Similarly, Plaintiff relies on Dr. Hunt's assurance that she would be reimbursed for her tuition expenses as creating a property interest. But the Seventh Circuit has rejected arguments based on such informal assurances. *See, e.g.*, *Lee v. County of Cook*, 862 F.2d 139, 142–43 (7th Cir. 1998) ("Ms. Osterman's statement that Ms. Lee's 'job was secure and would continue as long as she kept up the good work' does not constitute an implied contract or mutually explicit understanding . . . ."). This is particularly true when the matter at issue (in Plaintiff's case, tuition reimbursement) is expressly governed by contract or state law, and when the individual that made the assurance lacks authority to bind the state to such a promise in any event. *See McElearney v. University of Illinois at Chicago Circle Campus*, 612 F.2d 285, 290 (7th Cir. 1979) ("[A]gainst the background of formal, explicit rules governing the tenure status of faculty members, such representations and interim promotion do not create a property interest in

10

employment."); *Lee*, 862 F.2d at 143 ("[A] first-line manager like Ms. Osterman clearly lacked the authority to bind the state. Therefore, her statements can hardly be construed as a mutually explicit understanding of job tenure.").

Finally, Plaintiff argues she had a property interest in "re-employment" in the District. The argument is based on her allegation that, "[o]n information and belief, in previous instances where the District's full-time positions have gone to part-time, the District offered the eliminated full-time employee(s) the part-time position before posting it." (Am. Compl. ¶ 77.) Like an employer who encourages professional development, however, the fact that a school district has retained other employees in part-time positions after their full-time positions have been eliminated falls far short of establishing a property interest in re-employment under which every employee whose position is reduced is entitled to re-employment. In sum, Plaintiff has failed to state a plausible claim that she was deprived of a property interest without due process of law.

**B. No Liberty Interest**

Plaintiff also purports to base her due process claim on a liberty interest. Her claim is based on the fact that the District accused her of "immoral conduct" in a complaint to the DPI seeking to revoke her professional license and prevented her from obtaining employment within the District. (Am. Compl. ¶¶ 144–45.) There is no allegation, however, that the charge was made publicly. Indeed, there is no allegation even of what the accusation was.

"It is well-established that an individual does not have any cognizable liberty interest in his reputation, and therefore mere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *O'Gorman v. City of Chicago*, 777 F.3d 885, 891 (7th Cir. 2015) (quotations

omitted). Rather, it is "[o]nly when paired with the alteration of legal status, such as a right previously held, will such defamation implicate due process rights." *Id.* Put another way, "the Supreme Court [has] suggested . . . that the state infringes on an employee's liberty interests if it discharges an employee while making false charges against him, so damaging the employee that he is precluded as a practical matter from finding other government employment." *Strasburger v. Board of Education*, 143 F.3d 351, 355–56 (7th Cir. 1998) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972)).

In this case, although Plaintiff believes the DPI charge is part of her "permanent record," there is no allegation as to how the matter has "precluded [her] as a practical matter" from further employment. And whether the District's DPI complaint was defamatory or not, Plaintiff certainly suffered no alteration of legal status as a result thereof. As stated in the complaint, the DPI dropped the matter and declined to pursue revocation of her license. (Am. Compl. ¶ 115.) Moreover, the District did not make the allegedly defamatory statement when Plaintiff was fired, but more than a year later.

From the foregoing, it follows that Plaintiff has also failed to state a plausible claim that she was deprived of a liberty interest without due process of law. For all of these reasons, Plaintiff's fourth cause of action alleging a violation of due process will be dismissed.

## II. First Amendment Claim as to Defendant Hunt

Defendants also move to dismiss Plaintiff's fifth cause of action as to Dr. Hunt in her official capacity because the claim is redundant. Plaintiff's fifth cause of action asserts a First Amendment violation under 42 U.S.C. § 1983 against all defendants (Am. Compl. ¶ 151), including, as indicated in the caption to the amended complaint, the individual Board Members in their "individual

capacities" and Dr. Hunt in her "individual and official capacities." Defendants correctly note that an action for damages against a party in her official capacity is, in essence, an action against the governmental entity of which the official is an agent. *Monell v. Dept. of Social Serv's*, 436 U.S. 658, 690 n.55 (1978); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (claim against an individual in his official capacity is "in all respects other than name, to be treated as a suit against the [municipal] entity . . . for the real party in interest is the entity."). Because Plaintiff also asserts the First Amendment claim against the District, Defendants contend the official-capacity claim against Dr. Hunt should be dismissed as duplicative. *See Ball v. City of Munie*, 28 F. Supp. 3d 797, 802 (S.D. Ind. 2014).

Plaintiff's only argument against dismissal of the official-capacity claim as to Hunt is that Plaintiff seeks not only damages but prospective, injunctive relief. Plaintiff relies on *Will v. Michigan Dep't of State Police*, where the Supreme Court noted that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." 491 U.S. 58, 71 n.10 (1989) (quotation omitted). *Will* is inapplicable here because the District is subject to the same claim for prospective relief, and the district, unlike the state in *Will*, is not entitled to sovereign immunity. Accordingly, the official-capacity claim as to Dr. Hunt will be dismissed, but the individual-capacity claims against Hunt and the other Board Members will remain, along with the claim against the District and the Board.

**THEREFORE, IT IS HEREBY ORDERED** that Defendants' second motion for partial dismissal (ECF No. 15) is **GRANTED**. The Fourth Cause of Action is dismissed with prejudice as to all parties. The Fifth Cause of Action is dismissed as to Defendant Hunt in her official capacity.

13

Defendants' first motion to dismiss (ECF No. 7) is **DENIED AS MOOT**. The Clerk is hereby directed to set this matter on the court's calendar for a telephone scheduling conference.

Dated this  15th  day of May, 2015.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court